UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NIKOLA SOBOT,<br><br>            Plaintiff,<br><br>     v.<br><br>CLEAN THE WORLD FOUNDATION INC.,<br><br>            Defendant. | Civil Action No. 22-cv-1846 (TSC) |

### MEMORANDUM OPINION

Plaintiff Nikola Sobot sued his former employer, Clean the World Foundation, Inc., alleging several violations of D.C. employment law after he was terminated while on sick leave. Following discovery, the parties cross-moved for summary judgment. Having reviewed the record and the briefs, the court will GRANT in part and DENY in part Plaintiff's motion and GRANT in part and DENY in part Defendant's cross motion.

### I.     BACKGROUND

Plaintiff began employment with Defendant as "Director, Development of Fundraising" on August 1, 2019. Offer Letter, ECF No. 22-4 at 1; *see* Employment Verification, ECF No. 26-6. His initial annual salary was $110,000, but he was promised an increase to $120,000 if he personally raised $100,000 in new funds, and $125,000 if he personally raised $150,000 in new funds. Offer Letter at 1–2. Plaintiff was never compensated at a higher rate, however. Pl.'s Resp. to Def.'s First Set of Interrogs. & Req. for Prod. of Docs., ECF No. 26-8 at 5. Instead, his salary was reduced three times between November 2019 and April 2020, before it was reinstated

to $110,000 in July 2021. *Id.* at 4–5; *see* Nov. 1, 2019 Mem., ECF No. 26-3; Jan. 15, 2020 Mem., ECF No. 26-5.

Defendant's declarant provided that, during Plaintiff's two years of employment, he personally raised $131,000 in new funds. Decl. of Ken Parker, ECF No. 22-3 ¶ 13 ("Parker Decl."). Plaintiff, however, asserts that he personally raised close to $1 million in new funds, primarily because of a Center for Disease Control ("CDC") grant valued at approximately $990,000. Email Re: Termination and Offer of Resignation, ECF No. 26-1.

Once the CDC grant was secured, Plaintiff took approximately three weeks paid time off. Dep. of Nikola Sobot, ECF No. 22-6 at 116:3–9 ("Sobot Dep."). During that time, he agreed to be available to handle any issues that came up regarding the CDC grant, but "for everything else," was "not available basically." *Id.* at 116:12–16, 120:2–6. Plaintiff claims that during his time off, however, he was "disturbed heavily" by Defendant's employees, who "request[ed] send us this, send us that, so on." *Id.* at 116:18–21.

When Plaintiff officially announced the CDC contract to Defendant's Board in December 2021, it came to light that Plaintiff committed Defendant to provide services in Louisiana and Utah instead of the locations Defendant had directed him to target. Parker Decl. ¶ 19. Defendant asked Plaintiff to renegotiate the contract for the desired locations, but he refused. *Id.* Another employee then stepped in and successfully renegotiated the contract. *Id.* ¶ 21. At some point prior to January 2022, Plaintiff erased most of his CDC grant-related emails. *Id.* ¶ 23.

In response to the CDC negotiations, Defendant decided to terminate Plaintiff on or before January 7, 2022, on the basis of insubordination, disregard for assignments, misrepresentations to management, failure to produce substantial personal fundraising, and destroying the CDC emails. *Id.* ¶¶ 24-25. Plaintiff was scheduled to meet with his supervisor on

January 10, 2022, when his supervisor planned to inform him of his termination.  *Id.* ¶ 26.  On January 10, however, Plaintiff took sick leave.  *Id.* ¶ 27.  Defendant nonetheless informed him of his termination and offered him a severance package which he rejected.  *Id.* ¶¶ 28–30.

Plaintiff sued in D.C. Superior Court in May 2022.  *See* Compl., ECF No. 9 at 1. Defendant removed the action to this court soon thereafter.  *See* Notice of Removal, ECF No. 1. At the close of discovery, Defendant moved for summary judgment on all counts, ECF No. 22 ("Def.'s Mot.") and Plaintiff cross-moved for partial summary judgment, *see* ECF No. 26 at 1 ("Pl.'s Mot.").  The court subsequently requested supplemental briefing on the amount in controversy, Min. Order, June 12, 2024, which the parties submitted, agreeing that the amount in controversy is satisfied.  *See* Def.'s Suppl. Br., ECF No. 31; Pl.'s Resp., ECF No. 33.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if "a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination."  *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* (quoting *Anderson*, 477 U.S. at 248).  The party seeking summary judgment bears the burden to provide evidence showing "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## III.   JURISDICTION

The court has diversity jurisdiction here.  Plaintiff is domiciled in the District, Compl. ¶ 4, and Defendant is domiciled in Florida, its principal place of business, Parker Decl. ¶ 3; 28

U.S.C. § 1332(c)(1). The amount in controversy also exceeds $75,000 because Plaintiff requests $32,000 in lost wages, "treble damages" under D.C. law, along with "compensatory and punitive damages in amounts to be determined at trial," "reasonable attorneys' fees, expert fees, and costs," and "pre-judgment and post-judgment interest." Compl. Prayer for Relief ¶¶ F–I. Considering treble damages puts the amount in controversy at $96,000, even without considering punitive damages. *See, e.g.*, *Bradford v. George Washington Univ.*, 249 F. Supp. 3d 325, 334 (D.D.C. 2017) (considering treble damages in determining amount in controversy). Consequently, the court has subject matter jurisdiction.

### IV.   COUNTS 1, 3, AND 4

In Counts 1 and 3, Plaintiff alleges that Defendant violated the D.C. Wage Payment Collection Law and breached their employment agreement by reducing his salary on several occasions, failing to increase his salary when he met fundraising benchmarks, requiring him to work while he was on paid leave, and refusing to pay out his unused vacation time upon termination. Compl. ¶¶ 22–23, 33–34. In Count 4, Plaintiff alleges that Defendant unjustly enriched itself at his expense by retaining wages due to him. *Id.* ¶ 37.

The D.C. Wage Payment Collection Law requires employers to "pay all wages earned to his employees at least twice during each calendar month," D.C. Code § 32-1302, and defines "wages" as "all monetary compensation after lawful deductions, owed by an employer for labor or services rendered, whether the amount is determined on a time, task, piece, commission, or other basis of calculation," *id.* § 32-1301(3). This law defines "wages earned" by reference to the relevant employment agreement, where applicable. *See, e.g.*, *Craig v. Not for Profit Hosp. Corp.*, 626 F. Supp. 3d 87, 108 (D.D.C. 2022). "'Discretionary payments,'" such as bonuses, "do not qualify as wages under the Act because they 'are not owed, but are given only by leave of the employer.'" *Harbour v. Univ. Club of Wash.*, 610 F. Supp. 3d 123, 133 (D.D.C. 2022).

The elements of a breach of contract claim under D.C. law are: (1) a valid contract, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach. *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009). A "valid and enforceable contract requires 'both (1) agreement as to all material terms, and (2) intention of the parties to be bound.'" *Simon v. Circle Assocs.*, 753 A.2d 1006, 1012 (D.C. 2000) (citation omitted). "The proper interpretation of a contract, including whether a contract is ambiguous, is a legal question." *Abdelrhman v. Ackerman*, 76 A.3d 883, 887 (D.C. 2013) (citation omitted). In construing contractual language, "the court must determine what a reasonable person in the position of the parties would have thought" it meant, from an objective perspective. *Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1064 (D.C. 2008) (citation omitted); *see Simon*, 753 A.2d at 1012. If a court decides a contract is ambiguous, "summary judgment is generally improper" unless "the non-moving party fails to point to any relevant extrinsic evidence supporting that party's interpretation of the language" for consideration by a jury. *Abdelrhman*, 76 A.3d at 219.

"Modification of a contract normally occurs when the parties agree to alter a contractual provision or to include additional obligations, while leaving intact the overall nature and obligations of the original agreement." *Hildreth Consulting Eng'rs, P.C. v. Larry E. Knight, Inc.*, 801 A.2d 967, 974 (D.C. 2002). The parties "are free to modify a contract at any time" by "mutual consent." *2301 M St. Coop. Ass'n v. Chromium LLC*, 209 A.3d 82, 88 (D.C. 2019). In the employment context, "an employer may prospectively modify the terms of at-will employment," and "the employee's continued service amounts to acceptance of the modification." *Kauffman v. Int'l Bhd. of Teamsters*, 950 A.2d 44, 48 (D.C. 2008). That is the

rule because "neither party to at-will employment is bound to continue performance," and therefore doing so is "valid consideration for the change in terms." *Id.*

Finally, unjust enrichment under D.C. law "has its roots in the common law concept of quasi-contract." *4934, Inc. v. D.C. Dep't of Emp. Servs.*, 605 A.2d 50, 55 (D.C. 1992). This concept is a "legal fiction invented by common law courts to permit recovery by contractual remedy in such cases where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise." *Id.* (quoting Black's Law Dictionary 324 (6th ed. 1990)). "Unjust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *News World Commc'ns, Inc. v. Thompsen*, 878 A.3d 1218, 1222 (D.C. 2005). In the employment context, unjust enrichment is often used "to reach what [courts] deem to be the correct result" in workers compensation cases, particularly where sums were overpaid or erroneously paid. *4934, Inc.*, 605 A.2d at 56.

The parties agree that Defendant reduced Plaintiff's salary, did not increase Plaintiff's salary to $120,000 or $125,000, did not pay out his accrued leave upon termination, and that Plaintiff did not receive any additional compensation for working during his paid leave. Consequently, these claims turn on whether Defendant was obligated under the employment agreement or by statute to pay Plaintiff additional wages, and, if not, whether Defendant was unjustly enriched.

### A.     Salary Reductions

#### i.     November 2019

There is a genuine dispute of material fact regarding Counts 1, 3, and 4 with respect to Defendant's decision to reduce Plaintiff's salary in November 2019. The record does not clearly

show that Plaintiff was notified of the reduction to his $110,000 salary and continued to perform his duties as an employee after he was notified. Defendant provided an email stating: "Nikola [Sobot is] also willing to take a modest reduction in salary," and that Plaintiff would provide Defendant with "how much [he] can accept in terms of a compensation reduction" by the end of the day on November 6, 2019. Email from Sam Stephens to Michael O'Quinn, ECF No. 25-1 at 12. Plaintiff testified at his deposition that he discussed the pay reduction in November 2019 with his supervisor. Sobot Dep. at 69–70. But, as Plaintiff explained, he did not know that the salary reduction would be "retroactive" to November 2019, since the personnel memo was not provided to employees until December 2019. *Id.* at 70:5–20. *But see* Nov. 1, 2019 Mem. (personnel memo regarding salary reduction dated November 1, 2019, but without receipt that it was sent to or received by Plaintiff). Plaintiff also provided an email he sent to Rachele Christian in December 2019, in which he asked for his paycheck to be recalculated because he thought there was a mistake, again indicating that he did not know his salary would be reduced retroactive to November 2019. Email from Nikola Sobot to Rachele Christian, ECF No. 14-9 at 1. Because the material fact of when Sobot was notified of his November 2019 salary reduction and when he was told it would begin is in dispute, the court will deny summary judgment to both parties on Counts 1, 3, and 4.

    ii.  *January 2020 and April 2020*

  Defendant is entitled to summary judgment on Counts 1, 3, and 4 regarding the January 2020 and April 2020 salary reductions because Plaintiff agreed to the reductions. Regarding the January 2020 reduction, the record indicates that Plaintiff received the personnel memo about the salary reduction from Defendant on January 17, 2020. Email from Rachele Christian to Nikola Sobot, ECF No. 22-8 at 44 (attaching the personnel memo); *see* Jan. 15, 2020 Mem. Plaintiff

points to no evidence in the record that would allow a jury to come to a contrary conclusion. Similarly, Defendant contends that it announced the April 2020 pay reduction "organization-wide through a town hall, via department managers, and via messages on the Microsoft Teams Platform." Def.'s Statement of Undisputed Material Facts ¶ 20; *see* Parker Decl. ¶ 12; Microsoft Teams Message, ECF No. 25-2 at 44–45; Sobot Dep. at 114:15–19 (confirming receipt of the Teams message). Plaintiff provides no evidence that he did not receive notice of the April 2020 pay reduction across the workforce stemming from the COVID-19 pandemic. Consequently, by continuing with his employment after receiving notice of these salary reductions, Plaintiff agreed to modify his employment agreement, entitling Defendant to summary judgment on Counts 1 and 3. *Kauffman*, 950 A.2d at 48. And because the employment contract addresses Plaintiff's salary, a quasi-contract theory is inapplicable, and Defendant is entitled to summary judgment on Count 4. *See 4934, Inc.*, 605 A.2d at 55.

### B. Unused Vacation Time

Defendant is also entitled to summary judgment on Counts 1, 3, and 4 with respect to Plaintiff's claim that it was required to pay out his unused vacation time upon termination. As Defendant's PTO policy explains, an employee "may be compensated up to a maximum of eighty (80) hours of unused, awarded PTO . . . upon separation" only if that employee is in "good standing," which is defined as not terminated "for cause." PTO Policy, ECF No. 22-5 at 2. This policy is expressly incorporated into Plaintiff's employment agreement: "The above compensation and benefits are further governed by the terms and conditions set forth in the applicable Company policies and plan documents, which may be changed or amended from time to time." Offer Letter at 2. Consequently, Plaintiff agreed that he would not be compensated for accrued PTO if he were terminated for cause.

Despite Plaintiff's assertions in his brief, the record indicates that Plaintiff was terminated for cause. "The decision to terminate for cause was based upon Sobot's complete disregard for his assignments, failure to produce substantial personal fundraising, misrepresentations to [Defendant's] employees and his supervisor, insubordination, and destruction of [Defendant's] property to cover up his actions." Parker Decl. ¶ 25. Plaintiff disagrees, pointing only to an email about his termination between various employees in which Ken Parker recommended that Plaintiff be "terminated for not being a good fit" and that "no reason be given to Nikola other than" that Defendant "is going in another direction." Email from Ken Parker to Shawn Seipler et al., ECF No. 25-2 at 43. Despite that recommendation, Parker himself declared that Plaintiff's supervisor "made the final decision to terminate Sobot . . . for cause" "on or about January 7, 2022." Parker Decl. ¶ 24. Consequently, based on the record before the court, a reasonable jury could not find that Plaintiff was not terminated for cause on the existing record.

### C.  Working During PTO

The record indicates that Defendant was not obligated to pay Plaintiff more than his usual salary when he worked during his time off. Plaintiff agreed that he was paid for his time off, and indicated that he voluntarily agreed to handle anything that came up about the CDC grant while he was on vacation: "I informed everyone before I went on PTO that I would close the CDC deal . . . If they need any reply for me and so on. And that for everything else, I'm not available basically . . . I will be off, except for the CDC." Sobot Dep. at 116:12–16, 120:2–6; *see also* PTO Policy at 2 ("PTO is compensated at the employee's regular rate of pay.").

Plaintiff argues that, although he agreed to work on the CDC grant during his vacation, Defendant required him to work "in a way that exceeded the level to which he volunteered."

Reply to Opp'n to Mot. for Partial Summ. J., ECF No. 30 at 10 ("Pl.'s Reply").  In his view, he agreed communicate *with the CDC* on his time off, but not to respond to any inquiries from his co-workers, and was "disturbed heavily" when co-workers asked him to "send us this, send us that, so on." Sobot Dep. at 116:12–21.  Nothing in the record, however, indicates that he communicated this limitation to Defendant or his co-workers or indicated that responding to their requests would entitle him to additional compensation.  Consequently, he is not entitled to additional pay for responding to work-related inquiries during his paid time off.

        D.       **Fundraising and Salary Increases**

              i.       *Fundraising increase—$100,000 raised*

Plaintiff is entitled to summary judgment on Counts 1 and 3 regarding Defendant's failure to raise his salary when he reached the $100,000 fundraising threshold.  Defendant's declarant provided that Plaintiff personally raised $131,000 in new funds.  Parker Decl. ¶ 13. Defendant argues that there is insufficient evidence in the record to support the conclusion that Plaintiff personally raised the $131,000.  Reply to Opp'n to Mot. for Summ. J., ECF No. 28 at 10–11 ("Def.'s Reply").  This argument is unavailing.  For one thing, Defendant declared in its statement of undisputed material facts that Plaintiff personally raised $131,000 in funds.  Def.'s Statement of Facts ¶ 29.  For another, Defendant's principal declarant—Ken Parker—provided that same figure.  Parker Decl. ¶ 13.  Defendant's attempt to walk back its concession is unpersuasive.

Because the court finds that Plaintiff was entitled to a pay raise under D.C. law and the employment agreement, however, Defendant is entitled to summary judgment on Count 4—the quasi-contract claim.

      *ii.*  *Fundraising increase—$150,000 raised*

  Defendant is entitled to summary judgment with respect to Counts 1 and 3 regarding Defendant's failure to increase Plaintiff's salary to $125,000. Plaintiff contends that he personally raised close to $1 million in funds, primarily because of the CDC grant, which was valued at $990,000. *See* Email Re: Termination and Offer of Resignation. But the CDC grant does not qualify as "new funding" that counts towards Plaintiff's fundraising goal because it was an extension of an existing grant—not a new source of funding. *See* Def.'s Reply at 11; Pl.'s Reply at 8–9 (not refuting that Defendant already had a grant from the CDC).

  Plaintiff's employment agreement provides: "Upon achievement of personal fundraising of $150,000 in total *new funding*, compensation increases to $125,000 per annum." Offer Letter at 2 (emphasis added). The proper interpretation of the contract is a legal question to be determined by the court from an objective perspective. *Abdelrhman*, 76 A.3d at 887; *Simon*, 753 A.2d at 1012. In statutory construction, "one of the most basic interpretive canons" provides that "effect" should be "given to all" provisions, "so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (citation omitted). Here, the term "new funding" only bears meaning if it means that the funding must come from a new source. The first part of the clause—"achievement of personal fundraising of $150,000"—indicates already that the employee must themselves raise $150,000 in funds. Plaintiff's preferred interpretation of "new funding"—funding that "did not exist prior," Pl.'s Reply at 8—renders "new funding" meaningless and duplicative. *See Corley*, 556 U.S. at 314–15. To attach meaning to each word in the clause, the most straightforward interpretation of the contract is that the personal fundraising must come from a new source to count towards the $150,000 benchmark.

Defendant is also entitled to summary judgment on Count 4 because it was not unjustly enriched by Plaintiff's fundraising efforts. Put simply, fundraising was Plaintiff's job—he was "Director, Development and Fundraising." Offer Letter at 1. It is not unjust for an employer to retain the benefits from an employee doing their job well. To hold otherwise would be to indicate there is unjust enrichment anytime an employee performs above an employer's expectations, and that employee is legally entitled to additional compensation. Consequently, the court will grant Defendant summary judgment on Count 4.

## V. COUNT 2

In Count 2, Plaintiff alleges that Defendant interfered with his use of sick leave and retaliated against him for taking sick leave by terminating him while he was on leave in violation of the D.C. Accrued Sick and Safe Leave Act. Compl. ¶ 30.

### A. Retaliation

"It has long been settled in the District of Columbia that an employer may discharge an at-will employee at any time and for any reason, or for no reason at all." *Adams v. George W. Cochran & Co., Inc.*, 597 A.2d 28, 30 (D.C. 1991). The D.C. Accrued Sick and Safe Leave Act, however, limits this principle by providing that an "employer shall not discharge . . . an employee because the employee" "[u]ses paid leave." D.C. Code § 32-531.08(b). Courts in this district have applied the *McDonnell Douglass* burden shifting framework in analyzing "statutory retaliation claims arising under District of Columbia law." *Bartolo v. Whole Foods Mkt. Grp., Inc.*, 412 F. Supp. 3d 35, 44 (D.D.C. 2019). Typically, *McDonnell Douglass* requires that a plaintiff "first establish a prima facie case of retaliation" by a "preponderance of the evidence." *Id.* at 44–45. If the plaintiff does so, "the burden shifts to the employer to offer 'a legitimate, nondiscriminatory reason' for the termination decision." *Id.* at 45. "The burden then shifts back to the plaintiff to show that the defendant's proffered reasons are pretextual." *Id.* In cases

where, as here, the defendant provides a non-retaliatory reason for termination, "the one central inquiry" "is whether a reasonable jury could infer retaliation or discrimination from all the evidence.'" *Nurriddin v. Bolden*, 818 F.3d 751, 758 (D.C. Cir. 2016).

A reasonable jury could not infer that Plaintiff's termination was an act of retaliation for taking sick leave on January 10, 2022. To the contrary, the record shows that Defendant decided to terminate Plaintiff *before* January 10. Defendant's decision was made on or before January 7, 2022, to terminate Plaintiff for insubordination, disregard for assignments, misrepresentations to management, failure to produce substantial personal fundraising, and destroying emails. Parker Decl. ¶¶ 24–25. There is no evidence—other than the fact that Defendant went forward with the termination even though Plaintiff took sick leave on January 10—upon which a reasonable jury could rely to infer retaliation.

Plaintiff argues that there is a discrepancy between the justification Defendant gave for Plaintiff's termination at the time and the justification it gave during litigation. Pl.'s Mot. at 13–14. Plaintiff claims that when he was terminated, he was told that he was not "a good fit," but there was no mention of insubordination. Nothing in the record, however, supports this assertion. Rather, the record indicates Parker *suggested* that Plaintiff be terminated for not being a good fit, Email from Ken Parker to Shawn Seipler et al., but Plaintiff's supervisor decided to terminate him for cause, Parker Decl. ¶ 24. Even if Defendant was initially told he was not "a good fit," however, that statement is not inherently inconsistent with Defendant's claim that he was terminated for insubordination, disregard for assignments, misrepresentations, failure to produce substantial fundraising, and destroying emails. *See id.* ¶¶ 24–25. Each of those justifications for termination would likely render an employee not "a good fit." Defendant is therefore entitled to summary judgment on Plaintiff's retaliation claim.

**B.**     **Interference**

The D.C. Code also provides that employers "shall not interfere with, restrain, or deny the exercise of, or the attempt to exercise" any right to paid leave, including sick leave. D.C. Code §§ 32-531.02, 32-531.08. To plead a claim for interference, "a plaintiff must be eligible for and denied sick leave." *Ruifang Hu v. K4 Sols., Inc.*, No. 18-cv-1240, 2020 WL 1189297, at *10 (D.D.C. Mar. 12, 2020).[1] Plaintiff does not allege that he was denied sick leave. To the contrary, the record demonstrates Defendant *granted* Plaintiff's request for sick leave. *See* Parker Decl. ¶¶ 24–25. "When an employer terminates an employee after medical leave commences, and for reasons unrelated to the sick leave, the employer does not violate the D.C. Leave Act." *Ruifang Hu*, 2020 WL 1189297, at *10. And as this court has already held, *supra* Section V.A, Plaintiff was terminated for reasons unrelated to his decision to take sick leave beginning January 10, 2022. Consequently, Defendant is entitled to summary judgment on Plaintiff's interference claim.

---

[1] Plaintiff argues that the correct legal framework is whether (1) the employer engaged in conduct that "reasonably tends to interfere with, restrain, or deny the exercise of" sick leave, and (2) whether that interference prejudiced the plaintiff. Pl.'s Mot. at 14 (citation omitted). But regardless of which standard the court applies, Plaintiff has not shown a genuine dispute of material fact regarding whether Defendant interfered with his use of sick leave.

## VI. CONCLUSION

For the foregoing reasons, the court will GRANT in part and DENY in part Defendant's Motion for Summary Judgment, ECF No. 22, and GRANT in part and DENY in part Plaintiff's Cross Motion for Partial Summary Judgment, ECF No. 27. An Order will accompany this Memorandum Opinion.

Date: September 9, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge