UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NIKOLA SOBOT,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>CLEAN THE WORLD FOUNDATION INC.,<br><br>　　　　　　Defendant. | Case No. 22-cv-1846-TSC-MJS |

**REPORT AND RECOMMENDATION**

After his employment termination from Clean the World Foundation Inc. ("CTWF"), Plaintiff Nikola Sobot ("Sobot") claimed wrongdoing and filed suit. He alleged violations of the D.C. Wage Payment and Collection Law ("DCWPCL") and the D.C. Accrued Sick and Safe Leave Act ("ASSLA"), along with common-law claims for breach of contract and unjust enrichment. On cross-motions for summary judgment, District Judge Tanya S. Chutkan resolved most of those claims in favor of CTWF as a matter of law, with two exceptions: Sobot's claims that CTWF (1) improperly reduced his salary in November 2019 and (2) then wrongly failed to increase his salary after he met a $100,000 fundraising threshold, both pled alternatively as violations of the DCWPCL (Count I) and contractual breaches (Count III). CTWF now brings a motion for partial summary judgment regarding damages on those two sets of claims. On the salary-increase claims, CTWF asks the Court to determine Sobot's damages as a matter of law and undisputed fact. And on the salary-decrease claims, CTWF asks the Court to determine Sobot's maximum recoverable damages if he prevails. *See* Fed. R. Civ. P. 56(g). Separately, in the wake of CTWF's motion for partial summary judgment on damages, Sobot filed a motion for attorneys' fees. Both motions are before the undersigned on referral from Judge Chutkan. Based on a careful review of the parties'

1

filings and the governing authorities and caselaw, the undersigned **RECOMMENDS** that the Court **GRANT IN PART** CTWF's Rule 56 motion (ECF No. 39) and **DENY WITHOUT PREJUDICE** Sobot's motion for attorneys' fees (ECF No. 44).

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The Court provides a high-level background of the facts relevant to this motion and otherwise points the reader to Judge Chutkan's prior summary judgment ruling for more context. *See Sobot v. Clean the World Found. Inc.*, 2024 WL 4119389, at *1 (D.D.C. Sept. 9, 2024).

Sobot began working for CTWF in August 2019 in the role of "Director, Development and Fundraising," at an annual salary of $110,000. (*See* ECF No. 39-2 ("Def.'s Stmt.") ¶ 1; *see also* ECF No. 22-4 ("Offer Letter").) Through its offer letter to Sobot, CTWF agreed to raise Sobot's salary if and when he achieved certain personal fundraising targets—to $120,000 if he secured at least $100,000 in total new funding for the organization, and to $125,000 if he secured at least $150,000 in total new funding. (Def.'s Stmt. ¶ 7; *see also* Offer Letter.)

CTWF never increased Sobot's salary along these lines. CTWF, in fact, decreased Sobot's salary several times during his employment. To start, effective November 1, 2019, CTWF reduced Sobot's salary by $13,000 (to $97,000 annually). (Def.'s Stmt. ¶ 3.) Then, in the months that followed, CTWF reduced his salary twice more, in January and April 2020, respectively. (*Id.* ¶ 4.)[1] In her summary judgment ruling, Judge Chutkan held that Sobot's claims related to the January and April 2020 decreases failed as a matter of law and undisputed fact. This was because Sobot impliedly agreed to the decreases "by continuing with his employment after receiving notice of these salary reductions[.]" *Sobot*, 2024 WL 4119389, at *4. But as to the November 2019 decrease,

---

[1] The record reflects that at least some of these reductions were associated with organization-wide belt-tightening caused by the COVID-19 pandemic.

Judge Chutkan found there was a material dispute of fact as to whether Sobot received advanced notice of that pay reduction and whether it would be retroactive. *Id.* at *3. So that discrete aspect of Sobot's salary-reduction claims—pled as a DCWPCL violation in Count I and, alternatively, as a contractual breach of his offer letter in Count III—survived summary judgment. Those claims place at issue Sobot's alleged underpayment during the two-month period from November 1 through December 31, 2019.

Sobot's other remaining claims are premised on CTWF's failure to increase his salary after he met the $100,000 fundraising threshold. Based on the undisputed facts, Judge Chutkan ruled that Sobot satisfied that threshold during his employment and entered summary judgment in Sobot's favor on that aspect of his claims—again, pled in the alternative as a DCWPCL violation in Count I, and a contractual breach in Count III. *Sobot*, 2024 WL 4119389, at *5. But the Court's ruling did not determine the precise date on which Sobot met the threshold or Sobot's resulting damages. Through its latest motion, CTWF points to evidence showing that Sobot reached that fundraising metric "no earlier than March 29, 2021." (Def.'s Stmt. ¶ 8.)

Effective July 1, 2021, CTWF restored Sobot's base salary to $110,000 annually, and CTWF later raised Sobot's salary to $116,000 effective October 1, 2021. (Def.'s Stmt. ¶¶ 6, 10.) Ultimately, CTWF terminated Sobot's employment as of January 10, 2022.[2]

Sobot filed suit against CTWF in D.C. Superior Court in May 2022, and CTWF soon removed the case to federal court. (ECF No. 1, Notice of Removal.) After discovery, the parties filed cross-motions for summary judgment, which Judge Chutkan resolved in September 2024. As

---

[2] CTWF's statement of facts says Sobot was terminated "effective January 20, 2022 (Def.'s Stmt. ¶ 11), but this appears to be a typo, including because: (1) CTWF's briefing elsewhere uses a January 10 termination date to calculate damages, and (2) both sides in their original summary-judgment filings were aligned that Sobot was terminated on January 10. (*See* ECF No. 22-2 ¶ 53 (CTWF's original statement of facts); ECF No. 26 ¶ 16 (Sobot's original statement of facts).) Plus, Sobot's opposition does not challenge CTWF's damages methodology and argue, for instance, that damages should be calculated beyond January 10, 2022.

3

previewed, Judge Chutkan granted summary judgment in CTWF's favor as to most of Sobot's claims, except on two sets of claims. One, as to Sobot's claims that CTWF improperly failed to increase his salary to $120,000 after he met a fundraising threshold, the Court granted summary judgment in favor of Sobot. Two, as to Sobot's claims that CTWF improperly decreased his salary in November 2019, the Court denied summary judgment to both sides, finding that triable issues of fact precluded entry of judgment either way as a matter of law. *See Sobot*, 2024 WL 4119389.

CTWF then filed the present motion seeking partial summary judgment as to Sobot's damages on the salary-increase claims and a determination as to Sobot's maximum potential damages on his salary-reduction claims (should he prevail). That motion is fully briefed. (ECF Nos. 39, 42, 43.) Thereafter, Sobot's counsel filed a motion for attorneys' fees, seeking a prevailing-party fee award for attorney time incurred to this point. That motion is likewise fully briefed. (ECF Nos. 44, 45, 46.) Judge Chutkan referred the case to the undersigned "for purposes of resolving any requests for attorneys' fees and damages," including CTWF's motion for partial summary judgment. (Min. Order, Feb. 3, 2025.) This ruling follows.

## DISCUSSION

I. **CTWF's Motion For Partial Summary Judgment**

    A. **Governing Legal Standards**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A genuine issue of material fact exists if the evidence, viewed in a light most favorable to the nonmoving party, could support a reasonable jury's verdict for the nonmoving

4

party." *Figueroa v. Pompeo*, 923 F.3d 1078, 1085 (D.C. Cir. 2019) (citation and quotation marks omitted). In carrying out this analysis, the Court does not "weigh the evidence and determine the truth of the matter" but instead determines only "whether there is a genuine issue for trial." *Waggel v. George Wash. Univ.*, 957 F.3d 1364, 1371 (D.C. Cir. 2020) (citation and quotation marks omitted). "The movant bears the initial burden of demonstrating that there is no genuine issue of material fact." *Montgomery v. Risen*, 875 F.3d 709, 713 (D.C. Cir. 2017). "In response, the non-movant must identify specific facts in the record to demonstrate the existence of a genuine issue." *Id.*; *see also* D.D.C. LCvR 7(h)(1) (requiring a party opposing summary judgment to submit a "separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement").

Within the broader framework of Rule 56, subsection (g) empowers the Court to "enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established for the case." Fed. R. Civ. P. 56(g); *see Mack v. WP Co., LLC*, 923 F. Supp. 2d 294, 301–02 (D.D.C. 2013) (explaining that Rule 56(g) allows a court to "'indicate the extent to which the amount of damages or other relief is not in controversy'") (quoting 10B Wright, Miller & Kane, Federal Practice and Procedure § 2737 at 312–14 (3d ed. 1998)); *see also Arthur Glick Truck Sales, Inc. v. Hyundai Motor Am.*, 2024 WL 3992387, at *8 (S.D.N.Y. Aug. 29, 2024) (applying Rule 56(g) to limit the maximum recoverable damages based on undisputed facts). This sort of ruling is one that Rule 56(g) "authorizes, but does not require[.]" *Reitz v. Progressive Direct Ins. Co.*, 2015 WL 6438241, at *7 (E.D. Cal. Oct. 21, 2015).

### B. Sobot's Salary-Increase Claims

Start with the claims the Court resolved in Sobot's favor as to liability: his claims (in Counts I and III) that CTWF failed to raise his salary after he met the $100,000 fundraising threshold.

#### 1. DCWPCL (Count I)

As CTWF recognizes, the Court's summary-judgment ruling found that CTWF should have increased Sobot's salary from $110,000 to $120,000 because Sobot achieved the $100,000 fundraising goal. But the Court's prior ruling did not determine exactly when Sobot met that $100,000 goal or quantify his resulting damages. Here, CTWF proffers evidence to show that Sobot met the goal by "no earlier than March 29, 2021." (*See* Def.'s Stmt. ¶ 8; *see also* ECF No. 26-1 (email drafted by Sobot himself summarizing his fundraising history, including a $35,000 fundraising contribution on March 29, 2021 that pushed him over the $100,000 threshold).) But CTWF stresses that, as of March 2021, the organization's COVID-related salary reductions remained in effect, which held true until the organization restored full standard salaries effective July 1, 2021. (ECF No. 39-1 ("Def.'s Mem.") at 8; Def.'s Stmt. ¶ 6.)[3] Because of this, and because the Court found that Sobot agreed to the April 2020 salary reduction in effect in March 2021, *see Sobot*, 2024 WL 4119389, at *4, CTWF argues that Sobot's resulting salary bump would have otherwise taken effect on July 1, 2021, when full salaries were restored. Thus, CTWF calculates Sobot's damages from July 1, 2021, through the end of his employment on January 10, 2022.

Sobot's opposition—which spans fewer than three pages and includes not a single case citation or evidentiary reference (*see* ECF No. 42 ("Pl.'s Opp'n"))—barely even gestures at a response to these arguments. It simply posits, in conclusory fashion, that "it is not absolutely clear in the record when Plaintiffs reached the fundraising goal and when his salary should have been

---

[3] Citations to the parties' briefs are to the page numbers assigned by the Court's electronic case-filing system.

6

adjusted to $120,000[.]" (*Id.* at 2.) That sort of generalized and non-specific rejoinder falls far short of establishing a genuine dispute of material fact. This is particularly true considering that CTWF relies on Sobot's own words—*i.e.*, an email that Sobot wrote in January 2022—to show that his fundraising crossed the $100,000 threshold on March 29, 2021. (*See* ECF No. 26-1.) To the extent Sobot contends he met that fundraising goal earlier, or that CTWF was obligated to increase his salary prior to July 1, 2021 (the date full salaries were restored), it was incumbent on Sobot to point to specific facts and specific evidence to support that assertion. *People for Ethical Treatment of Animals v. Dep't of Health & Hum. Servs.*, 464 F. Supp. 3d 385, 390 (D.D.C. 2020) ("The nonmoving party's opposition must be supported by affidavits, declarations, or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.") (citing Fed. R. Civ. P. 56(e)); *see also* LCvR 7(h) (requiring essentially the same). He failed to do so. The Court therefore agrees with CTWF's framework as to the applicable damages period on this claim.

Against that framework, CTWF proffers evidence to show that Sobot's lost wages associated with this claim total $3,666.71. From July through September 2021, Sobot was being underpaid $10,000 on an annual basis, *i.e.*, the difference between his $110,000 salary and the $120,000 salary he should have been awarded. And CTWF explains that he was paid twice monthly—a total of 24 annual pay periods (Def.'s Stmt. ¶ 2)—which results in a differential of $416.67 per pay period during that window. For the six pay periods across those three months, Sobot lost around $2,500 in wages ($416.67 x 6 pay periods = $2,500.02). Then, effective October 1, 2021, CTWF increased Sobot's salary to $116,000, at which point he was being underpaid $4,000 annually or $166.67 per pay period. For the seven pay periods from October 1, 2021 through the end of Sobot's employment on January 10, 2022, he therefore lost out on a total of

7

$1,166.69 in wages ($166.67 x 7 pay periods = $1,666.69). Combined, these two amounts represent Sobot's baseline wage damages on the salary-increase claim: a total of $3,666.71.

CTWF then calculates liquidated damages under the DCWPCL in "an amount equal to treble the unpaid wages." D.C. Code § 32-1303(4). Here, the liquidated damages total $11,000.13, as CTWF correctly calculates. But CTWF incorrectly presumes that the trebled damages subsume the underlying wages, too. Not so. Under the statute, the liquidated damages amount is additive to the underlying wage loss. *Martinez v. Asian 328, LLC*, 220 F. Supp. 3d 117, 123 (D.D.C. 2016) ("[T]he DCWPCL awards treble damages as liquidated damages *in addition to* the actual damages in the form of unpaid wages.") (citing *Barahona v. Rosales*, 2016 WL 11585399 (D.D.C. Sept. 26, 2016)); *see also Sanchez v. Ultimo, LLC*, 2024 WL 3633696, at *8 (D.D.C. Aug. 2, 2024) (awarding unpaid wages *plus* liquidated damages valued at treble the underlying wage damages); *Martinez Ramos v. Justin's Cafe, LLC*, 2020 WL 1905188, at *3 (D.D.C. Apr. 16, 2020) (same). In other words, Sobot is entitled to unpaid wages in the amount of $3,666.71 *plus* an additional award of liquidated damages in the amount of $11,000.67, for a total award on this claim of $14,667.38.

For these reasons, and especially absent any concrete argument from Sobot as to why CTWF's damages methodology or calculations are inaccurate, the Court should rule that Sobot is entitled to a total of $14,667.38 under the DCWPCL on his salary-increase claim.

### 2. Breach of Contract (Count III)

As noted, Sobot pursues this same claim under an alternative breach-of-contract theory in Count III, and Judge Chutkan found that Sobot was entitled to summary judgment on liability under that theory, too. But under the doctrine of double recovery, "a party cannot recover the same damages twice, even though the recovery is based on two different theories." *Medina v. Dist. of Columbia*, 643 F.3d 323, 326 (D.C. Cir. 2011) (citation and quotation marks omitted); *CoStar Grp.,*

*Inc. v. Leon Cap. Grp., L.L.C.*, 2022 WL 2046096, at *5 (D.D.C. June 7, 2022) ("[D]amages for the same injury may be recovered only once even though they are recoverable under two or more legal theories for two or more wrongs."). Courts have applied this doctrine to limit recovery for lost wages on alternative theories of statutory and contractual relief. *See, e.g.*, *Kenney v. Palmer-Stuart Oil Co., Inc.*, 2017 WL 4581800, at *3 (W.D. Va. Oct. 13, 2017) (declining to award duplicative recovery for unpaid wages under alternative statutory and breach-of-contract claims); *Clancy v. Skyline Grill, LLC*, 2012 WL 5409733, at *5 (D. Md. Nov. 5, 2012) (awarding unpaid-wage damages only once, even though plaintiff proved liability under "three statutes and for breach of contract"), *report and recommendation adopted*, 2013 WL 625344 (D. Md. Feb. 19, 2013).

CTWF says this principle applies here, arguing the Court should award Sobot only a single recovery for his salary-increase claim, even though he demonstrated liability under two alternative theories of relief. (Def.'s Mem. at 10–11.) The Court agrees. And as between the two theories, CTWF calculated damages under the DCWPCL (Count I), presuming that is what Sobot would elect "if given the choice," in light of the statute's inclusion of a liquidated-damages multiplier that is not available on a standard breach-of-contract claim (Count III). The Court agrees with that approach, too, especially since it yields a higher award to Sobot than a contractual remedy.

Sobot's opposition ignores this argument entirely, which means the Court could treat the point as conceded. *See Brett v. Brennan*, 404 F. Supp. 3d 52, 59 (D.D.C. 2019) ("It is well-understood that 'if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded.'") (quoting *Wannall v. Honeywell. Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014)). But even absent concession, a straightforward application of the doctrine against double recovery dictates this result.

9

In short, assuming the Court awards Sobot the above-listed damages under the DCWPCL, it should decline to award additional damages for this same injury through his contract claim.

C.     **Sobot's Salary-Decrease Claims**

That leaves Sobot's salary-decrease claims: his claims (in Counts I and III) that CTWF improperly reduced his annual salary by $13,000 in November and December 2019.

Neither side prevailed on these claims at summary judgment because Judge Chutkan found "the material fact of when Sobot was notified of his November 2019 salary reduction and when he was told it would begin is in dispute." *Sobot*, 2024 WL 4119389, at *3. But CTWF now seeks a ruling under Rule 56(g) as to Sobot's maximum potential damages on these claims. The Court is empowered to issue this sort of ruling, *see, e.g.*, *Mack*, 923 F. Supp. 2d at 301–02; *Arthur Glick Truck Sales, Inc.*, 2024 WL 3992387, at *8, and Sobot does not suggest otherwise.

1.     **DCWPCL (Count I)**

CTWF calculates possible damages on Sobot's salary-decrease DCWPCL claim by starting with the $13,000 salary differential (the delta between his original $110,000 salary and the reduced $97,000 salary), which breaks down to $541.67 per pay period. Across the four pay periods in November and December 2019, CTWF says, Sobot arguably missed out on a total of $2,166.67 in lost wages ($541.67 x 4 pay periods = $2,166.67). (*See* Def.'s Mem. at 9.) Lost wages on this claim would stop as of January 1, 2020, based on the Court's ruling that Sobot agreed to the ensuing salary reduction that took effect on that date. In addition to lost wages, CTWF again calculates a potential liquidated damages award, trebling the alleged wage losses to a value of approximately $6,500. But as before, CTWF mistakenly treats the liquidated damages amount as the full measure of damages, rather than adding the potential liquidated damages to the underlying allegedly unpaid

10

wages. *Martinez*, 220 F. Supp. 3d at 122–23. The amounts are additive. Properly calculated, the total potential damages on this claim (wages plus liquidated damages) would equal $8,666.67.

For this reason, and because Sobot again fails entirely to engage with CTWF's arguments or damages methodology on this claim, the Court should determine that Sobot's maximum potential damages on his salary-decrease claim under the DCWPCL total $8,666.67.

### 2. Breach of Contract (Count III)

The same double-recovery analysis discussed above in connection with Sobot's salary-increase claims would likewise preclude double-recovery on Sobot's salary-decrease claims. Accordingly, the Court follows CTWF's lead in focusing on a potential damages award for his claimed injury under the DCWPCL (Count I) without identifying a separate, duplicative award on Sobot's breach-of-contract theory (Count III) for the same alleged harm premised on the same facts. So again, assuming the Court adopts the determination above regarding Sobot's maximum possible damages under the DCWPCL, it should find that no additional damages would be available under a breach-of-contract theory for the same alleged salary-reduction injury.

## D. Punitive Damages

CTWF next seeks a ruling that Sobot cannot recover punitive damages on his remaining claims. Sobot disagrees and says a jury should decide. CTWF is correct.

CTWF begins by arguing that the DCWPCL does not even authorize an award of punitive damages. CTWF does not cite to any cases that have specifically so held, but it analogizes to a few cases that have held punitive damages to be unavailable under other "remedial statutes." (Def.'s Mem. at 11–12.) In opposition, Sobot ignores this argument entirely, and he certainly does not identify any cases that have awarded punitive damages under the DCWPCL or even squarely allowed the pursuit of punitive damages under the statute. On balance, the Court finds CTWF's

position reasonably persuasive. For one thing, unlike in other statutes that expressly allow for punitive damages—*e.g.*, the D.C. ASSLA, *see* D.C. Code § 32-531.12(e)(3)—the D.C. Council did not include punitive damages among the categories of recovery under the DCWPCL; instead, the DCWPCL incorporates a liquidated damages regime. For another thing, the consensus view among federal courts is that punitive damages are not available under the DCWPCL's federal analogue, the Fair Labor Standards Act ("FLSA"). *See, e.g.*, *Koné v. Staples, Inc.*, 2025 WL 2097737, at *6 (D.D.C. July 25, 2025) (ruling that punitive damages are "unavailable" under the FLSA); *O'Connor v. Soul Surgery LLC*, 2024 WL 4817660, at *6 (D. Ariz. Nov. 15, 2024) (similar)). These points suggest that punitive damages are not available under the DCWPCL.

But ultimately, the Court doesn't need to reach that issue. Even assuming punitive damages might theoretically be available for a DCWPCL violation, Sobot fails to put forward sufficient evidence to allow a jury to make the necessary finding to support such an award.

As the D.C. Court of Appeals has explained, punitive damages are only available where a plaintiff proves, "by clear and convincing evidence," that the defendant acted with "malice or its equivalent." *Croley v. Repub. Nat'l Comm.*, 759 A.2d 682, 695 (D.C. 2000) (quoting *Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 938 (D.C. 1995)). In other words, the plaintiff must be able to prove "evil motive or actual malice," *see id.* (quoting *United Mine Workers of Am., Int'l Union v. Moore*, 717 A.2d 332, 341 (D.C. 1998)), which requires misconduct that was "willful and outrageous, reckless or aggravated by evil motive, actual malice or deliberate violence or oppression," *Koné*, 2025 WL 2097737, at *6.

Here, CTWF says the undisputed facts preclude Sobot from carrying this burden because his claims boil down to a "run-of-the-mill compensation dispute." (Def.'s Mem. at 12–14.) In response, Sobot does not contest the legal burden he must shoulder but insists there is indeed

evidence that CTWF acted "with malice, ill will, recklessness and oppressiveness." (Pl.'s Opp'n at 2.) This is so, Sobot argues, because CTWF's actions were tantamount to "wage theft" and because CTWF "offers no apologies for stealing Plaintiff's wages and has rejected every effort to come clean and pay Plaintiff his wages over a period of almost three years." (*See id.*) But beyond that rhetoric, Sobot fails to point to any specific facts—certainly not any material facts tied to specific evidence in the record—to support a credible prospect of recovering punitive damages. CTWF, on the other hand, points to undisputed evidence that scuttles such a prospect.

First, as to the salary-reduction claims, the Court previously recounted Sobot's testimony that he "discussed the pay reduction in November 2019 with his supervisor," but concluded there was a material issue of fact as to whether Sobot was advised about the salary reduction in advance or whether it would be "retroactive." *Sobot*, 2024 WL 4119389, at *3. Given Sobot's admission that his supervisor openly discussed the November 2019 pay reduction with him, the Court is hard-pressed to see how Sobot can legitimately characterize that reduction as some sort of underhanded and malicious "wage theft" to support a punitive damages theory. Likewise, on the salary-increase claims, CTWF points to evidence indicating a disagreement over whether some of Sobot's fundraising came from "new funding," which was a condition for the salary increase(s) in Sobot's offer letter. (*See* ECF No. 22-8 at 40–41 (cited in Def.'s Mem. at 13).) More, despite that disagreement, CTWF still increased Sobot's salary to $116,000 effective October 2021—*i.e.*, an increase representing 60% of the $10,000 pay raise. (Def.'s Stmt. ¶ 10.) On these facts, no reasonable jury could find that CTWF acted with the requisite intent to support punitive damages.[4]

---

[4] This analysis maps onto Sobot's breach-of-contract claims on these same issues in Count III, too. As CTWF rightly argues (Def.'s Mem. at 14), under District of Columbia law, punitive damages are only available in "rare" breach of contract cases "aggravated by particularly egregious conduct." *Kahal v. J. W. Wilson & Assocs., Inc.*, 673 F.2d 547, 548 (D.C. Cir. 1982). Put another way, "only where the alleged breach of contract merges with, and assumes the character of, a willful tort will punitive damages be available." *Fed. Fire Prot. Corp. v. J.A. Jones/Tompkins Builders, Inc.*, 267 F. Supp. 2d 87, 91 (D.D.C. 2003). It is not

13

The Court should grant CTWF's motion on this basis. *See, e.g.*, *Taylor v. Dist. of Columbia*, 951 F. Supp. 2d 186, 200 (D.D.C. 2013) (granting summary judgment on punitive damages for lack of evidentiary support of "malicious, willful, wanton, or reckless" acts); *Karaahmetoglu v. Res-Care, Inc.*, 480 F. Supp. 2d 183, 189–90 (D.D.C. 2007) (similar).

### E.     Attorneys' Fees

Finally, CTWF asks the Court to hold that Sobot cannot or should not recover various categories of attorneys' fees, including for time spent on unsuccessful claims and legal theories. (Def.'s Mem. at 14–17.) The Court deems it far more appropriate and efficient to address these fee-related arguments in the full context of resolving Plaintiff's motion for attorneys' fees, so it recommends denying CTWF's motion on those points.

\*     \*     \*

For these reasons, the Court should grant CTWF's Rule 56 motion in substantial part and hold that: (1) Sobot is entitled to damages on his salary-increase claim under the DCWPCL totaling $14,667.38 (inclusive of lost wages and liquidated damages); and (2) Sobot's maximum potential recovery on his DCWPCL salary-decrease claim based on the November 1, 2019 pay reduction would be $8,666.67 (inclusive of lost wages and liquidated damages).

### II.    Sobot's Motion For Attorneys' Fees

The Court pivots to Sobot's motion for attorneys' fees. Following CTWF's motion for partial summary judgment—and seemingly in response to CTWF's arguments to preemptively foreclose fee recovery on certain claims—Sobot filed a motion seeking prevailing-party fees and

---

enough, moreover, merely that a defendant is shown to have "breached in bad faith." *Id.* (citing *Kahal*, 673 F.2d at 548). Once again, Sobot does not contest these legal standards but simply argues that he can satisfy them. For the same reasons explained already, the undisputed factual record demonstrates otherwise.

14

costs in the amount of $75,654.38, which reportedly represents a 25% discount off the lodestar "for claims [Plaintiff] did not succeed on[.]" (ECF No. 44 at 3.) In response, CTWF filed a full-throated opposition. CTWF acknowledges that Sobot was a "prevailing party" on certain claims but argues that the Court should deny an award of fees altogether or at least reduce any fee award considerably because of Sobot's limited success, among other reasons. (*See* ECF No. 45.)

At this juncture, the Court believes it premature to resolve any fee petition. After all, the parties continue to litigate some of Sobot's claims. This is true not only as to damages, but also as to liability for purposes of Sobot's remaining salary-decrease claim. Presumably, Sobot will seek additional fees for time incurred from today through the end of the litigation, and the Court believes it would be inefficient to address a series of fee petitions on a piecemeal basis, rather than in one fell swoop at the conclusion of the case, as happens in the normal course. *Jones v. Dist. of Columbia*, 314 F. Supp. 3d 36, 68 (D.D.C. 2018) (denying fee petition without prejudice as "premature" and confirming that it would entertain that motion "after the completion of [the] case"); *G & E Real Est., Inc. v. Avison Young-Washington, D.C., LLC*, 317 F.R.D. 313, 318 n.3 (D.D.C. 2016) (similar, deeming "motion for fees" to be "premature" given "remaining disputes"); *S.G. v. Dist. of Columbia*, 533 F. Supp. 2d 105, 107 (D.D.C. 2008) (similar).

In keeping with the existing referral from Judge Chutkan, the undersigned stands prepared to entertain a renewed motion for attorneys' fees and costs at the conclusion of the case.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the Court **GRANT IN PART** CTWF's motion for partial summary judgment. Specifically, the Court should hold that: (1) Sobot is entitled to damages on his DCWPCL salary-increase claim totaling $14,667.38

(inclusive of lost wages and liquidated damages); (2) Sobot is not entitled to duplicative damages for that same injury through his breach-of-contract claim; (3) Sobot can recover a maximum damages award of $8,666.67 (inclusive of lost wages and liquidated damages) if he ultimately prevails on his salary-decrease claim under the DCWPCL, but not any duplicative recovery for that same injury through his breach-of-contract claim; and (4) Sobot cannot recover punitive damages on any of his remaining claims as a matter of law. Separately, the undersigned **RECOMMENDS** that the Court **DENY WITHOUT PREJUDICE** Sobot's motion for attorneys' fees as premature, with leave to refile at the conclusion of the case.

Dated: August 13, 2025

                                        MATTHEW J. SHARBAUGH
                                        United States Magistrate Judge

\*   \*   \*

The Court hereby advises that, pursuant to 28 U.S.C. § 636(b)(1)(C) and LCvR 72.3(b), any party who objects to a report and recommendation must file a written objection within fourteen (14) days of the party's receipt of the report and recommendation. The written objections must specifically identify the portion of the report or recommendation to which objection is made and the basis for such objections. Failure to file timely objections to the findings and recommendations set forth in this report may waive that party's right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985).