**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| NIKOLA SOBOT,<br><br>     Plaintiff,<br><br>  v.<br><br>CLEAN THE WORLD FOUNDATION INC.,<br><br>     Defendant. | Case No. 22-cv-1846-TSC-MJS |

## REPORT AND RECOMMENDATION

Now that Plaintiff Nikola Sobot's various legal claims against his former employer Clean the World Foundation Inc. ("CTWF") are resolved—some in his favor and some not—Sobot returns to the Court with a renewed request for prevailing-party attorney's fees and costs in the total amount of $90,404.38. In opposing that request, CTWF presses a panoply of arguments for why any potential fee award in Sobot's favor should be substantially reduced. The matter is before this Court once more on referral from Judge Tanya Chutkan. For the reasons that follow, the undersigned **RECOMMENDS** that the Court **GRANT IN PART** Sobot's renewed motion for attorney's fees (ECF No. 50) and award a total of $57,879.38 in attorney's fees and costs.[1]

## RELEVANT BACKGROUND

For present purposes, the Court provides a high-level background and otherwise points the reader to prior rulings in the case for more context. *Sobot v. Clean the World Found. Inc. ("Sobot I")*, 2024 WL 4119389 (D.D.C. Sept. 9, 2024); *Sobot v. Clean the World Found. Inc. ("Sobot II")*,

---

[1] The Court can quickly resolve Sobot's request for costs. He seeks only $204.38 in costs associated with the initial filing fee and service efforts. (*See* ECF No. 44-3 at 3.) CTWF does not object to or oppose these requested costs, and they are properly recoverable. So the Court should award costs in the amount of $204.38. With that issue sorted, the rest of this decision focuses on Sobot's fee request.

2025 WL 2336414 (D.D.C. Aug. 13, 2025), *report and recommendation adopted*, 2025 WL 4083336 (D.D.C. Sept. 8, 2025). In short, Sobot worked for CTWF from August 2019 until January 2022. Over that period, CTWF reduced Sobot's salary three times—in November 2019, January 2020, and April 2020—before eventually restoring his original salary effective July 2021 (and slightly raising it soon after). CTWF terminated Sobot's employment in January 2022.

Several months later, Sobot sued. His four-count complaint against CTWF alleged statutory violations under the D.C. Wage Payment and Collection Law ("DCWPCL") (Count I) and the D.C. Accrued Sick and Safe Leave Act ("ASSLA") (Count II), as well as common-law claims for breach of contract (Count III) and unjust enrichment (Count IV). (*See* ECF No. 9, Compl.) The DCWPCL and breach-of-contract claims, more specifically, implicated seven different theories related to seven different payment issues (*see id.* ¶¶ 22–23, 33–34): Sobot's three salary reductions referenced above; CTWF's non-payment of vacation at Sobot's termination; CTWF's non-increase of Sobot's salary tied to two different fundraising thresholds; and pay for time that Sobot allegedly spent working on vacation. *See Sobot I*, 2024 WL 4119389, at *2–5 (breaking down Sobot's claims along these same lines). After discovery, the parties filed cross-motions for summary judgment, and Judge Chutkan ruled in CTWF's favor on most of Sobot's claims, including Counts II in its entirety and Counts I, III, and IV in substantial part. *See id.* at *2–6. Two aspects of Sobot's claims in Counts I and III came out differently, though: Judge Chutkan awarded summary judgment in Sobot's favor on the first of the two salary-increase claims, and she denied summary judgment to both sides on the November 2019 salary-decrease claim. *See id.*

CTWF then moved for partial summary judgment on the issue of damages as to the remaining claims. *See* Fed. R. Civ. P. 56(g). On referral, the undersigned ruled that Sobot was entitled to $14,667.38 in DCWPCL damages on the salary-increase claim and that Sobot's

2

maximum potential DCWPCL damages on the November 2019 salary-decrease claim would be $8.666.67 (with no duplicative award on either claim under a breach-of-contract theory). *See Sobot II*, 2025 WL 2336414, at *3–5. The undersigned separately recommended denying without prejudice Sobot's original petition for attorney's fees (ECF No. 44), with leave to renew that request at the close of the case. *Id.* at *7–8. Judge Chutkan adopted those recommendations in full.

Thereafter, CTWF reportedly agreed—without conceding liability on the salary-decrease claim—to tender the full measure of potentially recoverable damages to Sobot, totaling $23,334.05 ($14,667.38 + $8,666.67). (*See* ECF No. 49; ECF No. 51 at 3–4.) But the parties continued to dispute attorney's fees. So Sobot filed a renewed motion for fees (ECF No. 50 ("Mot.")), which added new details about counsel's billing activity since the original petition and otherwise pointed back to the prior submission (ECF No. 44 ("Original Mot."); ECF No. 46). CTWF timely opposed, and Sobot filed a reply. (ECF No. 51 ("Opp'n"); ECF No. 52 ("Reply").) In total, Sobot now seeks $90,404.38 in fees and costs (all but $204.38 of which represents attorney's fees). (*See* Reply at 12.)[2] CTWF presses several arguments as to why Sobot's claimed fees should be "significantly reduced if not denied entirely." (ECF No. 51.) The matter is fully briefed and ripe for decision.[3]

---

[2] Specifically, Sobot's original billing records reflect a total of 128.8 hours of time spent on non-fee-briefing activity, for a total of $96,600. (*See* ECF No. 44-3.) He discounted that figure by 25%, such that he seeks $72,450, plus $3,000 for 4 hours spent preparing the fee petition (with no discount). (*See* Original Mot. at 3.) The billing records that accompany Sobot's renewed motion—which capture time spent from mid-March 2025 through October 2025—seek recovery for another 19 hours in the amount of $14,250, and then Sobot requested a final 2 hours for time spent on his latest reply brief in the amount of $1,500. (Reply at 12.) For what it's worth, based on the Court's own math, these amounts collectively total $91,404.38 (an extra $1,000 above what Sobot's counsel lists in the briefing). The apparent discrepancy is immaterial, though, because the Court recommends awarding a substantially reduced amount for the reasons explained.

[3] After briefing was complete, Sobot moved for a status hearing so that counsel could "address any questions about the fee petition" to facilitate the Court's "decision on the motion as soon as possible." (ECF No. 53.) In light of the Court's ruling today, it **DENIES AS MOOT** Sobot's motion for a status hearing.

**LEGAL STANDARDS**

Under "the bedrock principle known as 'the American Rule,'" litigants "pay [their] own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Peter v. Nantkwest, Inc.*, 589 U.S. 23, 28 (2019) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–53 (2010)). The DCWPCL operates as one of those fee-shifting statutes. It provides that the court "shall" award "reasonable attorneys' fees and costs" to a prevailing plaintiff. D.C. Code § 32-1308(a)(1)(A). A "typical formulation" of what it means to be a "prevailing party," as the Supreme Court explained it decades ago, focuses on whether a plaintiff "succeed[ed] on any significant issue in litigation which achieves some of the benefit … sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (citation and quotation marks omitted).

In reviewing the reasonableness of a fee request, a court's general starting point is the lodestar amount, derived by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson,* 465 U.S. 886, 888 (1984). The fee applicant "bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates[.]" *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995). The applicant must provide "sufficiently detailed information about the hours logged and the work done ... based on contemporaneous time records," *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982), and show that the hourly rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation," *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 105 (D.D.C. 2015) (citing *Kattan ex rel. Thomas v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993)).

Against those baseline considerations, courts then consider a variety of factors to determine if the requested fee award should be adjusted "upward or downward, including the important factor of the 'results obtained.'" *Hensley*, 461 U.S. at 434. In making this "equitable judgment," a court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436–37; *see also Goos v. Nat'l Ass'n of Realtors*, 68 F.3d 1380, 1384 (D.C. Cir. 1995) ("[T]he district court does indeed have broad discretion to reduce requested fees when a plaintiff has achieved limited success.").

Finally, although "courts have a duty to ensure that claims for attorneys' fees are reasonable," *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C. Cir. 1993), the process "should not result in a second major litigation," *Hensley*, 461 U.S. at 437; *see also Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees … is to do rough justice[.]").

## DISCUSSION

Through his renewed motion, Sobot asks the Court to award more than $90,000 in fees, an amount that reportedly reflects a 25% discount—at least on some fees—to account for Sobot's relative success on his various claims. (*See* Original Mot. at 6; Reply at 12.) CTWF, understandably, does not contest Sobot's prevailing-party status. After all, the Court awarded summary judgment in Sobot's favor on at least some of his claims. But CTWF still urges the Court to substantially reduce any fee award based on Sobot's limited success and various criticisms of Sobot's counsel's billing entries. After addressing a few initial points, the Court takes CTWF's arguments in turn.

## I.    Preliminary Points

As an initial matter, the Court rejects CTWF's suggestion—gestured at a handful of times throughout its briefing—that Sobot's fee request should be denied entirely. (*See, e.g.*, Opp'n at 1,

4, 7, 19.) It is true that courts retain discretion to deny fees outright in certain cases, including where a fee request is "outrageously unreasonable." *See, e.g.*, *Env't Def. Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993); *Louise Trauma Ctr LLC v. U.S. Dep't of Justice*, 2026 WL 879190, at *4 (D.D.C. Mar. 31, 2026). But beyond a few fleeting references in its filings, CTWF never develops any concrete argument, much less one supported by applicable caselaw, that would justify the wholesale denial of Sobot's fee request here. *See Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019) ("A party forfeits an argument by mentioning it only 'in the most skeletal way, leaving the court to do counsel's work[.]'") (citation omitted); *see also Cabrera v. Magoo, Inc.*, 2025 WL 1341520, at *4 (D.D.C. May 8, 2025) (rejecting similar argument on similar grounds) *report and recommendation adopted*, 2025 WL 1824814 (D.D.C. July 2, 2025).

Next, even though CTWF does not contest Sobot's counsel's proposed billing rate, the Court is independently satisfied with its reasonableness. Sobot's counsel seeks to recover fees at a $750 hourly rate, which counsel describes as his "standard rate." (ECF No. 44-5 ¶ 5; ECF No. 50-1 ¶ 5.) In this Circuit, "an attorney's usual billing rate is presumptively the reasonable rate." *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 735 F. App'x 733, 735 (D.C. Cir. 2018) (citation and quotation marks omitted)); *Kattan ex rel. Thomas*, 995 F.2d at 278 ("[A]n attorney's usual billing rate is presumptively the reasonable rate, provided that th[e] rate is 'in line with those prevailing in the community for similar services[.]'") (quoting *Blum*, 465 U.S. at 895–96). More, as Sobot's filings reflect, counsel's proposed $750 hourly rate falls comfortably within the range supported by several frequently used fee matrices. (Mot. at 4–5 (citing to *Laffey* and *Fitzpatrick* matrices)). Courts "allow a fee applicant to submit attorneys' fee matrices as one type of evidence that 'provides a useful starting point' in calculating the prevailing market rate." *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015) (quoting *Covington*, 57 F.3d at 1109). And finally,

counsel submitted past examples where he was awarded similar rates by other courts and administrative agencies. Sobot's counsel's proposed $750 rate is reasonable.[4]

## II.      The Reasonableness of Counsel's Requested Hours

The Court turns next to CTWF's remaining arguments for a reduced award.

### A.      Reduction for Partial Success

Through its lead argument, CTWF insists the Court should reduce Sobot's requested fees based on his limited success in prevailing on only certain claims. CTWF urges, more specifically, a "reduction of at least 70% of the claimed fee[s]." (Opp'n at 9.) For his part, Sobot rightly acknowledges that some reduction is appropriate on this basis, as his fee petition applied a "25% discount" to certain fees incurred to account for "claims he did not succeed on." (Original Mot. at 3; *id.* at 6 ("Plaintiff is only seeking 75% of the total fees incurred because the court granted summary judgment to Defendant on Counts II (Accrued Sick and Safe Leave Act) and IV (Unjust Enrichment).").) On review, the Court agrees that a degree-of-success reduction is warranted but finds that neither side strikes the right balance with their proposed cut.

---

[4] The Court observes that, as a prevailing party under the DCWPCL, Sobot could have pursued a fee award based on the hourly rate indicated in the LSI *Laffey* matrix. *See* D.C. Code § 32-1308(b)(1); *Sanchez v. Ultimo, LLC*, 2025 WL 1024970, at *3–4 (D.D.C. Apr. 7, 2025). But Sobot did not seek fees at that higher rate, whether in his original fee petition or his renewed motion, even though Sobot's counsel expressly referenced the *Laffey* matrix in arguing why his proposed $750 hourly rate should be deemed reasonable. (*See* Original Mot. at 4–5.) Accordingly, and in keeping with the principle of party presentation, the Court will not entertain the prospect of awarding Sobot's counsel fees at a higher rate than his counsel requested. *Nat'l Ass'n of Realtors v. United States*, 97 F.4th 951, 957 (D.C. Cir. 2024) ("We adopt the framing of the dispute that is advanced by the parties because '[i]n our adversarial system of adjudication, we follow the principle of party presentation.'") (citation omitted); *De Paredes v. Zen Nails Studio LLC*, 134 F.4th 750, 753–54 (4th Cir. 2025) ("[B]ecause courts follow the principle of party presentation, a district court ordinarily need not consider hourly rates higher than those a fee-seeking party requests or lower than those with which the opposing party counters[.]") (citation and quotation marks omitted); *see also, e.g.*, *Sanchez v. Devashish Hospitality, LLC*, 2018 WL 7252898, at *2 (D.D.C. Dec. 17, 2018) (awarding fees in DCWPCL case at rates "lower than the LSI *Laffey* matrix rates" when those lower rates were specifically requested by counsel); *Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 8, 34 (D.D.C. 2010) (similar); *cf. Mattachine Soc'y of Washington, DC v. U.S. Dep't of Just.*, 406 F. Supp. 3d 64, 71 (D.D.C. 2019) ("The Court will not award [plaintiff] more than it asked for[.]").

Start with the governing legal principles. "When determining how to reduce fee awards for partially successful plaintiffs, the court must analyze the relationships between the successful and unsuccessful claims." *Cogdell v. Carnahan*, 2025 WL 1575617, at *7 (D.D.C. Feb. 3, 2025) (citing *Hensley*, 461 U.S. at 436–37). When a case involves "distinctly different claims … based on different facts and legal theories," then "counsel's work on one claim will be unrelated to his work on another claim" and fees should not be "awarded for services on the unsuccessful claim[s]." *Hensley*, 461 U.S. at 434–35; *Goos*, 997 F.2d at 1569 (explaining that the goal in such cases is to prevent a plaintiff from "piggybacking fees incurred for work done on losing claims onto unrelated winning issues"). But when the claims "involve a common core of facts" or are based on "related legal theories," then "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 435. Instead, in those sorts of cases, a court should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*; *Goos*, 997 F.2d at 1565 ("If successful and unsuccessful claims share a common core of facts ... a court should simply compute the appropriate fee as a function of degree of success.") (cleaned up). And ultimately, a court retains broad discretion as to how it chooses to adjust a fee award based on relative success, including through an across-the-board percentage reduction to the overall fee request. *See Goos*, 997 F.2d at 1571 (citing *Hensley*, 461 U.S. at 436–37).

Here, Sobot filed and fully litigated four claims against CTWF for: (1) wage violations under the DCWPCL in Count I; (2) violation of the D.C. ASSLA in Count II, including CTWF's alleged retaliatory termination of Sobot's employment; (3) various wage-related breaches of contract in Count III; and (4) unjust enrichment in Count IV. (*See generally* Compl.) With the dust now settled, Sobot succeeded, but only in part. He partially prevailed on Counts I and III, but the

8

Court ruled against him at summary judgment as to Count II entirely and as to several facets of Counts I, III, and IV, holding that those claims failed as a matter of law and undisputed fact.

The Court starts by asking whether the unsuccessful claims were "distinctly different" from the successful ones. *Hensley*, 461 U.S. at 434–35; *Goos*, 997 F.2d at 1569. For the most part, Count II fits that bill. Unlike the other claims that turned on discrete payment issues during various chapters of Sobot's employment, Count II focused principally on the circumstances of Sobot's employment termination in January 2022 and CTWF's surrounding motivation for that decision (with another aspect focused on whether CTWF interfered with Sobot's right to take sick leave during that same month). So the legal issues underpinning Count II were meaningfully different from the legal issues underlying the other claims. And even though there was some high-level factual overlap—*i.e.*, insofar the entire case stemmed from Sobot's employment relationship with CTWF—the factual points bearing on Count II were largely distinct from the factual backdrop relevant to the other claims. These observations likely explain why Sobot voluntarily applied a reduction of 25% to account for the Court's adverse ruling on Count II (and Count IV).[5] And since the Court cannot easily parse counsel's billing records to identify time spent on Count II versus the other claims, Sobot's proposed reduction strikes the Court as a step in the right direction.

But the problem is that the 25% reduction—by Sobot's own telling—does not account for any adjustment for Sobot's limited success on Counts I and III, which is where CTWF trains most of its focus in opposing Sobot's request. CTWF parses Counts I and III into seven distinct claims and argues that Sobot only prevailed on two of the "asserted grounds for recovery": the initial

---

[5] Sobot's briefing indicates that the 25% reduction was also meant to account for his loss at summary judgment on the unjust enrichment claim in Count IV. But as the Court recognized in its summary judgment ruling, Count IV was essentially just an alternative legal theory—one sounding in equity, rather than at law—as to certain of Sobot's pay-related claims in Counts I and III. Count IV, then, was not "distinct" from the successful claims in the same way as Count II, so the Court's treatment of Sobot's degree of success of Count IV is baked into the discussion that follows next concerning Counts I and III.

salary-increase claim, under both a DCWPCL theory and a breach-of-contract theory. (Opp'n at 7.) Further, CTWF adds, even if Sobot is seen as having nominally "prevailed" on the November 2019 salary-decrease claim (recall that CTWF voluntarily paid those damages to avoid a trial over less than $10,000), it would mean Sobot prevailed on only four of the "asserted grounds for recovery" in Counts I and III, representing "at best a 26% success rate." (*Id.*) Relatedly, and through a slightly different lens, CTWF says Sobot recovered only about 11% of the total damages he sought on Counts I and III—less than $24,000 out of about $204,000. (*Id.* at 8.) Based on these metrics, CTWF concludes, a substantial reduction of 70% of Sobot's request is warranted.

In response, Sobot faults CTWF's "mathematical" approach to this issue and cites *Hensley* for the proposition that "the result is what matters." (Reply at 3 (quoting *Hensley*, 461 U.S. at 435).) But Sobot then proceeds to claim that he achieved "full success on his DCWPCL claim as determined by the Court" and thus secured "full statutory damages available under the DCWPCL." (*Id.*) That is a drastic oversimplification, at best. Although Sobot secured relief on two pay-related theories under Counts I and III, the Court ruled against him on the other five theories at summary judgment. So, framed appropriately, Sobot certainly did not achieve "full success" on Counts I and III, his recovery notwithstanding. Neither were Sobot's various theories so intertwined and interrelated as to forestall any reduction based on his lack of success. Sobot suggests otherwise because his theories all stemmed from CTWF's alleged failure to pay wages. Although that statement rings true at a certain level of abstraction, it ignores the various legal and factual differences across Sobot's multiple theories of underpayment.[6]

---

[6] To illustrate: Sobot's theory for unpaid vacation at termination turned on the proper interpretation of CTWF's PTO policy under District of Columbia law and whether Sobot was terminated "for cause," whereas Sobot's salary-increase claims turned on whether he satisfied certain fundraising thresholds at various points in his employment, and Sobot's salary-decrease claims turned on whether he voluntarily

The Court accordingly agrees with CTWF that some reduction is warranted based on Sobot's partial success on Counts I and III, and CTWF's theory-by-theory methodology admittedly has some support in the caselaw. *See, e.g.*, *Salmeron v. District of Columbia*, 195 F. Supp. 3d 153, 174–75 (D.D.C. 2016) (collecting cases where courts "reduced the fee award by an amount directly proportional to the percentage of unsuccessful issues"). But at the same time, there was still some overlap to Sobot's various underpayment theories in Counts I and III, which makes it reasonable to conclude that at least some of the time "counsel spent on the unsuccessful [theories] undoubtedly contributed to the litigation" of the successful ones. *Craig v. District of Columbia*, 197 F. Supp. 3d 268, 284 (D.D.C. 2016). In light of all this, the Court concludes that CTWF's proposed 70% cut would be too drastic, while Sobot's prior 25% cut would be too modest. Instead, to strike an appropriate balance, the undersigned believes a 50% downward adjustment to Sobot's requested fees is warranted on this record. In the Court's eyes, this reduction accounts for Sobot's limited success—both as to Count II overall, and as to Counts I and III (and Count IV) in meaningful part—while recognizing that a good portion of counsel's time on the case was devoted to litigating the claims overall without being focused on specific claims or theories on a discrete basis.[7]

Accordingly, the Court should reduce Sobot's counsel's proposed lodestar amount by 50% to account for his limited success on his claims overall. *Goos*, 997 F.2d at 1571.

---

continued his employment after receiving notice of the salary reduction(s). At some level, these claims all turned on CTWF's alleged failure to pay Sobot, but they are meaningfully different in key respects.

[7] Although every case must be evaluated on its own terms, the Court is mindful that its proposal comports with prior cases that bear some similarities—thought not a perfect overlap—with the dynamics at play here. *See Harrell ex rel. J.W. v. District of Columbia*, 2024 WL 3640033, at *6 (D.D.C. Aug. 2, 2024) (reducing fee request by 50% where plaintiff succeeded on one third of the legal issues ); *Davis v. District of Columbia*, 2018 WL 6181736, at *3 (D.D.C. Nov. 27, 2018) (same); *Howard v. Achievement Prep. Academy Pub. Charter School*, 2016 WL 1212409 at *18 (D.D.C. Mar. 8, 2016) (similar, but 60% reduction).

### B.   Reduction for Proportionality to Sobot's Recovered Damages

Next, CTWF insists that a reduction is separately warranted because Sobot's counsel's requested fee award would be unreasonably disproportionate to the total monetary recovery obtained by Sobot himself as the party: more than $90,000 to counsel, versus less than $24,000 to Sobot. Not so. As the undersigned has previously written, "fee awards need not 'necessarily be proportionate to the amount of damages' recovered." *Cabrera*, 2025 WL 1341520, at *7 (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986)). And there are good policy reasons underlying that principle. As our Circuit has recognized, a rule of proportionality "would make it difficult, if not impossible, for individuals with meritorious ... claims but relatively small potential damages to obtain redress from the courts." *Williams v. First Gov't Mortg. & Invs. Corp.*, 225 F.3d 738, 747 (D.C. Cir. 2000) (quoting *Rivera*, 477 U.S. at 574). That dynamic is especially apparent in cases involving unpaid wages. *See, e.g.*, *Seo v. Oh*, 2024 WL 4381191, at *4 (D.D.C. Oct. 3, 2024) ("[T]his Court frequently awards reasonable attorneys' fees in excess of the unpaid wages awarded in FLSA and DCMWA cases) (collecting cases); *Driscoll v. George Washington Univ.*, 55 F. Supp. 3d 106, 114 (D.D.C. 2014) ("[C]alculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes: assuring that civil rights claims of modest cash value can attract competent counsel."). So the broader legal premise behind CTWF's argument misses the mark. Plus, in light of the Court's proposed 50% reduction based on Sobot's limited success—just explained above—the resulting differential between Sobot's recovery and his counsel's requested fee award will not be nearly as "whopping" as CTWF presupposes. (Opp'n at 9.) The Court should not impose any additional reduction on proportionality grounds.

### C.   Reduction Based on Specific Billing Practices

Separately, CTWF seeks additional reductions from Sobot's fee request based on several specific billing-related criticisms, including that counsel's records arguably reflect: (1) non-

contemporaneous billing; (2) block billing; (3) non-compensable administrative and clerical work; and (4) unreasonable and excessive time. The Court addresses each issue in turn.[8]

First, the Court is not persuaded by CTWF's accusation of after-the-fact timekeeping. Fee applications should, to be sure, rest on "contemporaneous time records," *In re Donovan*, 877 F.2d 982, 994 (D.C. Cir. 1989), not "[c]asual after-the-fact estimates of time expended on a case," *Concerned Veterans*, 675 F.2d at 1327. The fee petition here is supported by reasonably detailed billing records that include the dates of the hours billed and descriptions of the services provided, accompanied by sworn declarations from Sobot's counsel. (*See* ECF Nos. 44-3, 44-5, 50-1, 50-2.) In arguing that the records were created post hoc, CTWF misses the mark. To start, CTWF points to three entries involving deposition notices to several witnesses—contrasting an April 2023 billing entry describing the preparation and service of those notices with two entries in late June and early July 2023 reflecting additional work on the same notices. (Opp'n at 10.) But even if the work described is arguably a bit redundant in certain respects, the Court fails to appreciate how that chain of billing entries would be indicative of non-contemporaneous timekeeping. And importantly, later billing entries confirm that the depositions themselves took place in late July after all three notice-related entries (*see* ECF No. 44-3 at 8), so it's not as though counsel recorded time working on deposition notices for depositions that were already complete. Separately, CTWF highlights a September 2024 email exchange in which Sobot's counsel wrote that the back-and-forth communications with CTWF's counsel about a potential settlement resulted in "an additional half-hour" of attorney time for which Sobot would be seeking recovery, yet no such billing entry

---

[8] In reviewing these arguments, the Court focuses on the specific billing entries that CTWF identifies in its briefing, without independently combing through the billing records to hunt for other potential problems or concerns. *See Munoz v. Telligent Masonry LLC*, 2023 WL 6389129, at *6 (D.D.C. Oct. 2, 2023) ("If a plaintiff requesting attorneys' fees makes a reasonable showing of the hours expended in litigation, it is defendants' obligation to identify specific time entries that should not be compensated.").

appears in counsel's records. (Opp'n at 10.) But again, the Court is not persuaded that this reflects after-the-fact timekeeping issues. It might be a different story if counsel recorded that work on the wrong date or something along those lines, but CTWF does not suggest that to be so. If anything, the complete absence of a billing entry for that work is perhaps more reflective of counsel's judgment in not billing the time in the first place.

Second, CTWF fails to convince the Court that any reductions are warranted on the theory that counsel seeks fees for clerical, non-legal work. It is well settled, of course, that "purely clerical or secretarial tasks should not be billed," *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004) (citation omitted), but the billing entries that CTWF identifies—which total 6.3 hours of billable time—do not fall into that category. Instead, they generally reflect time spent reviewing orders, filings, communicating with opposing counsel, and updating the client. (Opp'n at 12–13.) Although the Court could conceivably raise a few questions about a line item or two within the full list of billing entries that CTWF compiled on this argument, the time associated with those specific entries is negligible, so the Court declines to impose any reduction on this basis.

Third, the Court does not believe any reductions are necessary based on CTWF's complaints about alleged block-billing—*i.e.*, lumping together distinct tasks in a single billing entry without delineating the time spent on each task. Block-billing is disfavored because the practice makes it "difficult to determine the accuracy and reasonableness of billing entries," *Smith v. District of Columbia*, 466 F. Supp. 2d 151, 158 (D.D.C. 2006), especially where "some tasks are not reimbursable" because "the court cannot verify that the party deducted the proper amount of time," *Pursuing Am.'s Greatness v. Fed. Election Comm'n,* 463 F. Supp. 3d 11, 20 (D.D.C. 2020). But the caselaw also recognizes that courts should not unduly penalize block-billing if there is "sufficient detail" to "evaluate what the lawyers were doing and the reasonableness of the number

14

of hours spent on those tasks." *Smith*, 466 F. Supp. 2d at 158. Applying these tenets to the nine specific entries CTWF criticizes here (Opp'n at 11–12), the Court is not inclined to reduce or exclude those hours on block-billing grounds. For many of the challenged entries, the tasks all relate to a common workstream—*e.g.*, deposition logistics (April 24, 2023), preparing the plaintiff for deposition (April 30, 2023), extending and rescheduling discovery (June 12, 2023), and summary-judgment reply briefing (August 26, 2023). And for the others, the entries contain sufficient detail to allow the Court to evaluate the overall reasonableness of time spent.

Fourth and finally, CTWF comes up short in arguing that some of Sobot's counsel's billing records reflect excessive time. CTWF flags two entries—totaling 2.2 hours of time—capturing what CTWF chalks up as mere "communication on relatively simple topics." (Opp'n at 13–14.) But those entries reflect more than simple communications; they include coordination with opposing counsel and the preparation of a court filing on a brewing discovery dispute that the parties ultimately raised with Judge Chutkan. Viewed in that full context, the time spent is not obviously excessive. Separately, CTWF refocuses on the billing entries related to deposition notices from April, June, and July 2023—totaling 2.7 hours—which the Court already addressed above in rejecting CTWF's argument about non-contemporaneous billing. But once again, those entries reflect broader activity than just preparing notices; they also reference time spent, at a minimum, communicating with opposing counsel about the depositions and coordinating with the client. Finally, CTWF attacks two billing entries totaling 2 hours of time on the initial client intake and consultation. While CTWF is entitled to its own views about counsel's efficiency, the Court does not agree that the time spent was so excessive as to warrant exclusion.

All in all, CTWF's entry-by-entry arguments for targeted reductions of Sobot's claimed fees simply fail to persuade. The Court should not reduce counsel's claimed fees on these grounds.

15

### D.    CTWF's Remaining Arguments

CTWF mounts two final arguments in urging a reduction in fees. Neither carries.

CTWF says that Sobot's counsel's discovery conduct in the case should lead the Court to "reduce all discovery-related entries" from a fee award, or at least all "fees incurred in connection with preparing his discovery responses and his deposition." (Opp'n at 15–16.) This argument stretches too far. The Court recognizes that Sobot's counsel clearly dropped the ball on written discovery for some time, prompting an admonishment from Judge Chutkan and a warning about possible sanctions. (*See* Min. Order, Apr. 14, 2023.) But counsel ultimately got back on track and completed the necessary work. That last point matters because counsel did ultimately spend the time on discovery for which he seeks an award, even if he should have done that work earlier and in keeping with the Court's deadlines. The Court is certainly not endorsing counsel's missteps in this case. But just as Judge Chutkan stopped short of imposing sanctions during the litigation, the undersigned is not prepared to foreclose recovery of fees for discovery-related activity, whether on a wholesale basis or on the slightly narrower terms that CTWF suggests.

Otherwise, CTWF argues the Court should reduce the fee award because Sobot's counsel, in CTWF's view, unnecessarily prolonged the litigation. But, practically, CTWF is really arguing that Sobot should be penalized for rejecting CTWF's prior settlement offers. (*See* Opp'n at 16–18.) CTWF first focuses on its September 2024 offer to resolve the case for the grand total of $20,000, which represented about 85% of the total monetary recovery Sobot ultimately achieved, but without any additional component attributable to attorney's fees. Sobot was fully entitled to decline that offer, though, and the Court cannot say that the decision to do so was patently unreasonable, especially since it barely included any value for fees at a stage when Sobot was entitled to an award of reasonable fees by statute (having already prevailed at least in part on his DCWPCL claim). *Cf. Cabrera*, 2025 WL 1341520, at *6–7 (rejecting argument that counsel "needlessly racked up" fees

by continuing to litigate for an additional year only to achieve an additional $5,000 in monetary recovery). Beyond that, CTWF says Sobot should have at least accepted the offer it extended after the Court's second summary judgment ruling—reportedly, a full recovery to Sobot and some amount in fees. (Opp'n at 18–19.) But as Sobot rejoins, the fee-related component of the offer was a maximum of $5,000. (Reply at 10.)[9] Sobot should not be penalized for declining such a low amount. Plus, from that point forward, the billing records indicate that counsel spent only about five hours of additional time, including on the renewed fee petition. So even if the Court were to credit CTWF's argument on this score (and it does not), it would not meaningfully change the result. At bottom, CTWF is arguing that Sobot should be blamed for allowing the issue of attorney's fees to become the tail that wagged the dog. But in the Court's view, if anything, that is a problem of both parties' making—stemming, at least in part, from CTWF's steadfast refusal to offer anything beyond a mere pittance in fees.

### III.   Fees on Fees

Sobot additionally requests an award of attorney's fees for time spent on his fee-related motions—so-called "fees on fees." Across both sets of briefing, Sobot's counsel seeks recovery for about 16 hours of time totaling $12,225 spent on fees-related briefing. (*See* ECF No. 44-3 at 9; ECF No. 50-2 at 4; Reply at 12.) This request is reasonable as a general matter. But unlike the time spent on the merits-related litigation, where counsel proactively reduced his fee request based on the relative degree of success, Sobot's counsel did not apply any discount to his request for fees on fees. Following the approach employed by other judges in this District, the undersigned recommends that the Court reduce the fees-on-fees award "proportionally to the percentage of fees actually awarded as compared to [counsel's] request." *Colorado Wild Pub. Lands v. U.S. Forest*

---

[9] CTWF's filing did not specify the amount of the settlement offer attributable to fees. That important context was only presented to the Court with Sobot's reply brief.

*Serv.*, 2025 WL 2406340, at *7 (D.D.C. Mar. 21, 2025); *12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 2020 WL 7248347, at *10 (D.D.C. Dec. 9, 2020) (applying the same "70-percent reduction" to fees on fees as applied to the merits-litigation fees). In other words, the Court should award 50% of the fees on fees.

## CONCLUSION AND RECOMMENDATION

The undersigned **RECOMMENDS** that the Court **GRANT IN PART** Sobot's renewed motion for attorney's fees. The supporting billing records (ECF Nos. 44-3, 50-2) reflect a total of 151.8 hours, and Sobot's counsel spent 2 additional hours on the latest reply brief, yielding a total lodestar of $115,350 (153.8 hours x $750 per hour). Applying a 50% discount to that overall baseline amount based on Sobot's relative success would net a total fee award of $57,675. Plus, as set forth above (*see supra* n.1), the Court should separately award $204.38 in costs. All told, then, the Court should approve a fees-and-costs award to Sobot in the amount of **$57,879.38.**

Dated: July 14, 2026

                             MATTHEW J. SHARBAUGH
                             United States Magistrate Judge

\*       \*       \*

The Court hereby advises that, pursuant to 28 U.S.C. § 636(b)(1)(C) and LCvR 72.3(b), any party who objects to a report and recommendation must file a written objection within fourteen (14) days of the party's receipt of the report and recommendation. The written objections must specifically identify the portion of the report or recommendation to which objection is made and the basis for such objections. Failure to file timely objections to the findings and recommendations set forth in this report may waive that party's right of appeal from an order of the District Court that adopts such findings and recommendations. *See Thomas v. Arn*, 474 U.S. 140 (1985).